# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEVE BOEHM, RAUL SILVA, and SHANNON OVERLAND, individually and on behalf of all others similarly situated, | Case No. 2:17-cv-12827 |
| | **CLASS ACTION COMPLAINT** |
| | JURY TRIAL DEMANDED |
| Plaintiffs, | |
| v. | |
| BMW OF NORTH AMERICA, LLC, a Delaware limited liability company, | |
| Defendant. | |

Plaintiffs Steve Boehm, Raul Silva, and Shannon Overland (collectively, "Plaintiffs"), by and through their undersigned counsel, bring this class action against Defendant BMW of North America, LLC ("Defendant") individually and on behalf of all others similarly situated, and allege as follows:

## NATURE OF THE CASE

1.      This is a consumer protection class action against Defendant on behalf of a nationwide class of all persons who are current or former owners and/or lessees of a model year 2010 MINI vehicles (the "Vehicles") sold or leased with a defective high pressure fuel pump, part number 13517588879 (the "Fuel

Pump") (the "Class").

2.    Plaintiffs allege that Defendant designed, manufactured, distributed, sold, and/or leased the Vehicles with the Fuel Pump, even though it is a defective engine part prone to premature failure, which could lead to sudden engine failure and loss of power to the Vehicles, even while operating at highway speeds (the "Defect").

3.    Despite issuing a service bulletin in 2010 to its dealerships for the same defective fuel pump part number in its 2007, 2008, and 2009 MINI vehicles and extending the warranty for those vehicles, Defendant has failed to provide any recall or similar warranty extension for the 2010 Vehicles.

4.    Plaintiffs also bring claims on behalf of their respective state subclasses.  All putative class members are collectively referred to herein as "Class Members."  Allegations in this complaint are based upon information and belief except for those allegations that pertain to Plaintiffs and their counsel. Plaintiffs' information and beliefs are based upon the investigation conducted to date by Plaintiffs and their counsel, and each allegation has evidentiary support or is likely to have evidentiary support upon further investigation and discovery.

## JURISDICTION AND VENUE

5.    The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because the proposed Class has more than 100 members,

the Class contains at least one member of diverse citizenship from Defendant, and the amount in controversy exceeds $5 million.

6.      The Court has personal jurisdiction over Defendant because Defendant maintains a principal place of business in this District, and Defendant has made sufficient contacts in this District, including the marketing, distribution, sale, and/or lease of the Vehicles.  Defendant's corporate headquarters are located in Woodcliff Lake, New Jersey, which is the location of Defendant's Customer Relations Department, MINI Communications Department, Corporate Communications Department, and Marketing Department.  In addition, Woodcliff Lake, New Jersey is the headquarters for Defendant's North American sales and distribution, and the location from which Defendant's press releases emanate. Defendant's Warranty Department is located in Westwood, New Jersey, which is where customers are directed to mail "Information Change Cards" and privacy opt-out notices.  Defendant's public website indicates a New Jersey choice-of-law and venue provision.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events, acts, and omissions giving rise to these claims occurred in this District.

## PARTIES

8.      Plaintiff Steve Boehm ("Plaintiff Boehm") is a resident of St. Louis, Missouri.  On or about March 2014, Plaintiff Boehm purchased a 2010 MINI Cooper Clubman S with approximately 32,000 miles on it.

9.      Plaintiff Raul Silva ("Plaintiff Silva") is a resident of Wheaton, Illinois.  On or about August 2014, Plaintiff Silva purchased a 2010 MINI Cooper S Convertible with approximately 40,400 miles on it.

10.     Plaintiff Shannon Overland ("Plaintiff Overland") is a resident of Austin, Texas.  On or about July 2010, Plaintiff Overland purchased a new 2010 MINI Cooper S Convertible.

11.     Defendant is incorporated in the state of Delaware, with a principal place of business at 300 Chestnut Ridge Road, Woodcliff Lake, New Jersey 07677.  Defendant has sold and leased and continues to sell and lease the Vehicles to consumers throughout the United States.

## FACTUAL ALLEGATIONS

12.     The fuel pump, utilized in modern vehicles equipped with internal combustion engines, delivers fuel from the gas tank to the engine at the pressure required to meet performance demands.  Because the fuel pump is responsible for delivering fuel to the engine, any issues with its operation can impact drivability and performance.

4

13.    At all times relevant herein, Defendant designed, manufactured, distributed, sold, and/or leased the Vehicles that contained one or more design flaws and/or defects that cause the fuel pump to fail prematurely.  The Fuel Pump Defect can at any time cause sudden engine failure, resulting in total loss of power to the vehicle, including while operating at highway speeds.

14.    The Vehicles are uniformly and inherently defective in materials, design, or workmanship, and prematurely fail under ordinary driving conditions and far in advance of their expected useful lives.  The Fuel Pump Defect exists regardless of driving conditions and compliance with Defendant's recommended maintenance schedule.

15.    Defendant provides an express warranty against any "defects in materials or workmanship" in the Vehicles to the first retail purchaser and each subsequent purchaser for 48 months or 50,000 miles, whichever occurs first.  The Vehicles also were delivered with a window sticker that includes a "MINI DELIVERY QUALITY ASSURANCE": "This MINI vehicle has been designed, engineered and manufactured under strict quality control guidelines.  It has been prepared and inspected to ensure that it is free of defects in workmanship and materials in accordance with the MINI New Passenger Car Limited Warranty issued by the MINI Division of BMW of North America, LLC."

16.    Defendant has sold thousands of the Vehicles without disclosing to

Class Members the existence of the Fuel Pump Defect, which Defendant knew about since at least 2010, when it issued a Technical Service Bulletin about the same Fuel Pump Defect in model year 2007, 2008, and 2009 MINI vehicles (the "Bulletin"). The Bulletin instructed Defendant's dealerships to extend the warranty for those vehicles to 10 years or 120,000 miles, whichever occurs first.

17.    Defendant sold and/or leased, and continues to sell and/or lease, the 2010 Vehicles with the same defective Fuel Pump, but Defendant did not include model year 2010 in the Bulletin and has refused to acknowledge the same defect for this model year.

18.    Starting with model year 2011 MINI vehicles, Defendant manufactured and sold its MINI vehicles with a different high pressure fuel pump (a different part number).

19.    Where the Fuel Pump Defect manifests after 48 months or 50,000 miles in the Vehicles, Defendant contends that the warranty period has expired and that Class Members must bear the cost of the repair, which can be thousands of dollars.

20.    Defendant has purposefully concealed, and continues to conceal, its knowledge of the Fuel Pump Defect in the Vehicles so that it can indicate to Class Members that the written warranty period "expired" before the Fuel Pump Defect manifests.

6

21.     Despite the safety risk to occupants of the Vehicles, Defendant failed to disclose material information regarding the Fuel Pump Defect in an attempt to avoid the cost of repair and, instead, unfairly shift the cost of repair to Class Members.  The Fuel Pump Defect presents a substantial safety risk because it can cause sudden engine failure and complete loss of Vehicle power at any time and without warning, even at highway speeds.

22.     Had Plaintiffs and Class Members known about the Fuel Pump Defect at the time of their purchase or lease, including the safety hazard posed by the Fuel Pump Defect and the monetary cost of repair, they would not have bought or leased the Vehicles, or would have paid much less for them. Consequently, Plaintiffs and Class Members have not received the value for which they bargained when they purchased or leased their Vehicles.

23.     Defendant has not recalled the Vehicles to repair the Fuel Pump Defect, has not offered all Class Members a suitable repair or replacement free of charge as required under their own warranty, and has not offered to reimburse Class Members who incurred costs relating to repair of the Fuel Pump Defect. Defendant has not offered Plaintiffs or Class Members any explanation as to why it extended the warranty for 2007, 2008, and 2009 MINI vehicles with the Fuel Pump Defect but has refused to do the same for the 2010 Vehicles.

24.     In or around October of 2015, the Fuel Pump in Plaintiff Boehm's vehicle began failing.  At that time, Plaintiff Boehm's Vehicle had approximately 50,000 miles on it. Plaintiff Boehm's Vehicle continued to experience engine problems with increasing frequency.  In or around March of 2017, Plaintiff Boehm determined that the Fuel Pump in his Vehicle was causing the problems.

25.     Despite the fact that Plaintiff Boehm's Fuel Pump was the same defective part number covered in the Bulletin, Defendant's local dealership refused to extend Plaintiff Boehm's warranty and/or cover the total cost of replacement.  To date, Plaintiff Boehm's Vehicle has not been repaired.

26.     In or around April of 2017, the Fuel Pump in Plaintiff Silva's Vehicle failed.  At that time, Plaintiff Silva's Vehicle had approximately 64,000 miles on it.

27.     Despite the fact that Plaintiff Silva's Fuel Pump was the same defective part number covered in the Bulletin, Defendant's local dealership refused to provide a quote for the cost of replacement without charging a diagnosis fee.  To date, Plaintiff Silva's Vehicle has not been repaired.

28.     In or around June of 2017, the Fuel Pump in Plaintiff Overland's Vehicle failed.  At the time of failure, Plaintiff Overland's Vehicle had approximately 63,000 miles.

29.      Despite the fact that Plaintiff Overland's Fuel Pump was the same defective part number covered in the Bulletin, Defendant's local dealership refused to extend Plaintiff Overland's warranty and/or cover the cost of replacement, instead providing an estimate of $2,251.14 for the repair.  As a result, Plaintiff Overland had the Fuel Pump in her vehicle replaced by a third-party mechanic, paying approximately $500 for parts and labor to replace the defective Fuel Pump.

30.      Under normal circumstances, a properly designed and manufactured high pressure fuel pump should last for the life of the engine without the need for repair or replacement.

## TOLLING OF STATUTES OF LIMITATIONS

31.      Defendant had exclusive knowledge of the defective nature of the Vehicles and knew the Fuel Pump Defect would not be discovered by Plaintiff and Class Members unless and until the Fuel Pump Defect manifested and/or caused damage to the Vehicles' engines.  Only Defendant had access to information about the Fuel Pump Defect, through its dealerships, pre-release testing, customer complaints, and other sources of information.  Additionally, the Fuel Pump is internal to the engine and is not intended to be a consumer-replaceable part.

32.     Since the Fuel Pump Defect cannot be detected until it manifests itself, Plaintiffs and Class Members exercising due diligence were not reasonably able to discover the Fuel Pump Defect until after purchasing the Vehicles. Plaintiffs and Class Members could not reasonably have been expected to learn of or discover Defendant's omissions of material information concerning the Vehicles until after manifestation of the Fuel Pump Defect and only then because they would be forced to research what had happened to their Vehicles.  Therefore, the discovery rule applies to all claims asserted by Plaintiffs and Class Members.

33.     Defendant has known about the Fuel Pump Defect since at least 2010, if not earlier, and has failed to alert Class Members to the Fuel Pump Defect.  To the contrary, upon information and belief, Defendant told Class Members who reported the Fuel Pump Defect that the mechanical failure of the Vehicles was attributable to causes other than defective design and manufacture.

34.     Thus, any applicable statute of limitations has been tolled by Defendant's actions and Defendant is estopped from pleading the statute of limitations because it failed to disclose facts it was obligated to disclose concerning the Fuel Pump Defect.

## CLASS ACTION ALLEGATIONS

35.     Plaintiffs seek relief in their individual capacity and seek to represent a class consisting of all others who are similarly situated.  Pursuant to Fed. R. Civ.

P. 23(a) and (b)(2) and/or (b)(3), Plaintiffs seek certification of a nationwide class

("Nationwide Class") of persons who are current or former owners and/or lessees

of the Vehicles, initially defined as follows:

> All persons and entities who purchased and/or leased a 2010 model year MINI vehicle with high pressure fuel pump part number 13517588879.

36.    In addition, Plaintiffs seek to certify the following subclass of

Missouri residents ("Missouri Subclass"):

> All persons and entities in the state of Missouri who purchased and/or leased a 2010 model year MINI vehicle with high pressure fuel pump part number 13517588879.

37.    In addition, Plaintiffs seek to certify the following subclass of Illinois

residents ("Illinois Subclass"):

> All persons and entities in the state of Illinois who purchased and/or leased a 2010 model year MINI vehicle with high pressure fuel pump part number 13517588879.

38.    In addition, Plaintiffs seek to certify the following subclass of Texas

residents ("Texas Subclass"):

> All persons and entities in the state of Texas who purchased and/or leased a 2010 model year MINI vehicle with high pressure fuel pump part number 13517588879.

39.    The Nationwide Class and the state subclasses above are collectively

referred to herein as the "Class," and their members as "Class Members."  The

"Class Period" will be from the date six years prior to the filing of this Complaint until the date notice is disseminated to the Class.

40. Plaintiffs reserve the right to amend or modify these Class definitions Period with greater specificity or division into subclasses after they have had an opportunity to conduct discovery.

41. <u>Numerosity</u>. Fed. R. Civ. P. 23(a)(1). The Class is so numerous that joinder of all members is unfeasible and not practicable. While the precise number of Class Members has not been determined at this time, Plaintiffs are informed and believe that thousands of consumers have purchased the Vehicles.

42. <u>Commonality</u>. Fed. R. Civ. P. 23(a)(2) and (b)(3). There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include for the Class, without limitation:

      a. Whether the Fuel Pump is defective;

      b. Whether Defendant knew or should have known of the Fuel Pump Defect before it sold or leased the Vehicles to Class Members;

      c. Whether Defendant failed to disclose the Fuel Pump Defect to Class Members;

      d. Whether the facts not disclosed by Defendant regarding the Fuel Pump Defect were material;

e.      Whether the Fuel Pump Defect places the safety of the

Vehicles' drivers and passengers at risk;

f.      Whether Defendant breached express and/or implied

warranties to Plaintiffs and Class Members;

g.      Whether Defendant violated New Jersey Consumer Fraud Act,

N.J. Stat. Ann. § 56:8-1, *et seq.*;

h.      Whether Defendant violated Mo. Ann. Stat. § 407.010, *et seq.*;

i.      Whether Defendant violated 815 Ill. Comp. Stat. § 505/2, *et*

*seq.*;

j.      Whether Defendant violated Tex. Bus. & Com. Code § 17.46,

*et seq.*;

k.      Whether Defendant should be financially responsible for

notifying Plaintiffs and Class Members of the Fuel Pump Defect and for the costs

of repairing it; and

l.      Whether Defendant should be required to reimburse Plaintiffs

and Class Members who paid to repair or replace the Vehicles as a result of the

Fuel Pump Defect.

43.      <u>Typicality</u>.  Fed. R. Civ. P. 23(a)(3).  Plaintiffs' claims are typical of

the claims of Class Members.  Plaintiffs and all Class Members were exposed to

uniform practices and sustained injury arising out of and caused by Defendant's unlawful conduct.

44.    <u>Adequacy of Representation</u>.  Fed. R. Civ. P. 23(a)(4).  Plaintiffs will fairly and adequately represent and protect the interests of Class Members. Plaintiffs' Counsel are competent and experienced in litigating class actions.

45.    <u>Superiority of Class Action</u>.  Fed. R. Civ. P. 23(b)(3).  A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the Classes is impracticable. Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims.  There will be no difficulty in the management of this action as a class action.

**COUNT I**
**Breach of Express Warranty**
**(On Behalf of Plaintiffs and the Nationwide Class or,**
**in the Alternative, on Behalf of the State Subclasses)**

46.    Plaintiffs re-allege and incorporate herein all foregoing factual allegations.

47.    Defendant represented that the Vehicles were safe and reliable. Defendant further represented that MINI would ensure "proper performance" of the Vehicles.  Such representations formed the basis of the bargain in Plaintiffs' and Class Members' decisions to purchase the Vehicles.

14

48.    Defendant provides an express warranty against any defects in materials and workmanship in the Vehicles to the first retail purchaser and each subsequent purchaser for 48 months or 50,000 miles, whichever occurs first. Defendant also represented that defects in materials and workmanship in the Vehicles that occurred during the initial warranty period would be replaced or repaired at no cost to the consumer.  However, the time and mileage limits contained in the written warranty were unconscionable and grossly inadequate to protect Plaintiffs and Class Members.  Among other things, Plaintiffs and Class Members had no meaningful choice in determining those time limitations; the terms of the warranty unreasonably favored Defendant over Plaintiffs and Class Members; a gross disparity in bargaining power existed as between Defendant and Class Members; and Defendant knew or should have known that the Vehicles were defective at the time of sale and would fail well before the end of their expected useful lives, thereby rendering the time limitations insufficient, inadequate, and unconscionable.

49.    Defendant knew or should have known at the time of sale that the Vehicles were defective and would fail prematurely solely as a result of a defect in design, materials, and workmanship, namely, the Fuel Pump Defect.  Plaintiffs and Class Members, on the other hand, had no notice of or ability to detect the Fuel Pump Defect prior to purchasing the Vehicles.  For this reason, the terms of

15

the limited warranty unreasonably favored Defendant over Plaintiffs and Class

Members, and Plaintiffs' and Class Members' acceptance of the warranty's time

limitation, to the extent they are found to apply so as to exclude instances where

the Fuel Pump Defect manifested itself outside of that limitation, was neither

knowing nor voluntary, thereby rendering such limitation unconscionable and

ineffective.

50.    Defendant breached its express warranty by knowingly selling to

Plaintiffs and Class Members the defective Vehicles without informing

consumers of the Fuel Pump Defect.

51.    Defendant further breached its express warranty by failing to remedy

the Fuel Pump Defect and repair damage caused by the Fuel Pump Defect without

charge to the consumer even though the Fuel Pump Defect was present during the

express warranty period, regardless of when the defect ultimately manifested.

Before Plaintiffs and Class Members suffered a fuel pump failure and resulting

damage, and while their Vehicles still were under warranty, they repeatedly

brought the Vehicles to Defendant's dealerships and authorized repair technicians

but were never advised to have the Fuel Pump examined, whether for a charge or

not, despite Defendant having issued the Bulletin in 2010 and having utilized a

replacement high pressure fuel pump to address the defect in subsequent model

years.

52.    As a direct and proximate result of Defendant's actions, Plaintiffs and Class Members have suffered economic damages including, but not limited to, repair costs, loss of use of the Vehicles, substantial losses in value and resale value of the Vehicles, and other damages.

### COUNT II
**Breach of Implied Warranty
(On Behalf of Plaintiffs and the Nationwide Class or,
in the Alternative, on Behalf of the State Subclasses)**

53.    Plaintiffs re-allege and incorporate herein all foregoing factual allegations.

54.    Plaintiffs and Class Members purchased and/or leased the Vehicles from Defendant by and through Defendant's authorized agents, or were otherwise expected to be the eventual purchasers of the Vehicles when bought from third parties.

55.    At all relevant times, Defendant was the manufacturer, distributor, warrantor, seller, and/or lessor of the Vehicles.  Defendant knew or had reason to know of the specific use for which the Vehicles were purchased and/or leased.

56.    At the time of purchase or lease, Defendant provided an implied warranty to Plaintiffs and Class Members that the Vehicles and their components including, but not limited to, the Fuel Pump, were merchantable and fit for the ordinary purposes for which they were sold.  Alternatively, Defendant's descriptions of the Vehicles became part of the bases of the bargains between

17

consumers and Defendant, creating implied warranties that the product purchased by Plaintiffs and Class Members would conform to Defendant's representations.

57.     The Vehicles purchased by Plaintiffs and Class Members did not conform to Defendant's representations.

58.     At the time of purchase or lease, the Vehicles were defective, unsafe, and not fit for the ordinary purpose of providing reasonably reliable and safe transportation for a reasonably expected length of time.  Under normal circumstances, a properly designed and manufactured high pressure fuel pump should last for the life of the engine without the need for repair or replacement. Defendant cannot disclaim this implied warranty as it knowingly sold and/or leased a defective product.

59.     Defendant knew or should have known the Fuel Pump Defect existed in the Vehicles at the time of manufacture and that the Vehicles and/or the Fuel Pump would fail prematurely.  Plaintiffs and Class Members, on the other hand, had no notice of or ability to detect the Fuel Pump Defect prior to purchasing or leasing the Vehicles.  Defendant sold and/or leased to Plaintiffs and Class Members the defective Vehicles without alerting them to the Fuel Pump Defect. After sale or lease, Defendant has failed to notify Plaintiffs and Class Members of the Fuel Pump Defect.

60.     Defendant knew or should have known that a reasonable consumer exercising due diligence, including Plaintiffs and Class Members, could not have discovered the Fuel Pump Defect unless and until the defect manifested itself, as the Fuel Pump is an internal part and not consumer-serviceable.

61.     Defendant failed to remedy the Fuel Pump Defect and repair damage caused by the Fuel Pump Defect without charge to the consumer.

62.     As a direct and proximate result of Defendant's actions, Plaintiffs and Class Members have suffered economic damages including, but not limited to, repair costs, loss of use of the Vehicles, substantial losses in value and resale value of the Vehicles, and other damages.

**COUNT III**
**Violation of the New Jersey Consumer Fraud Act,**
**N.J. Stat. Ann. § 56:8-1, *et seq.***
**(On Behalf of Plaintiffs and the Nationwide Class)**

63.     Plaintiffs re-allege and incorporate herein all foregoing factual allegations.

64.     The New Jersey Consumer Fraud Act ("NJCFA") protects consumers against "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise . . . ." N.J. Stat. Ann. § 56:8-2.

19

65.    Plaintiffs and Class Members are consumers who purchased and/or leased the Vehicles for personal, family, or household use.

66.    At all relevant times, Defendant conducted trade and commerce in New Jersey and throughout the United States within the meaning of the NJCFA.

67.    Defendant violated the NJCFA by engaging in the following deceptive trade practices:

(a)    affirmatively representing that the Vehicles are safe, and reliable and that MINI would ensure "proper performance" of the Vehicles, despite knowledge of the Fuel Pump Defect; and

(b)    affirmatively representing that the Vehicles were warranted against defects in materials and workmanship but did not intend to honor the warranty if, like the Fuel Pump Defect here, it was present during the warranty period but did not manifest until after that period.

68.    Plaintiffs and Class Members reasonably expected that the Vehicles would not be defectively designed such that the Fuel Pump would fail during normal use and cause sudden catastrophic engine failure.  Further, Plaintiffs and Class Members reasonably expected Defendant to honor its warranty obligations as represented to them at the time they purchased their Vehicles.

69.    Defendant knew, or, in the exercise of diligence, should have known, that the Vehicles were defectively designed or manufactured, posed a safety risk, and were not suitable for their intended and/or expected use.

70.    In failing to disclose the Fuel Pump Defect, the safety risk it posed, and the associated repair options and attendant costs which Defendant would not cover under warranty in the event of failure, Defendant omitted material facts it was under a duty to disclose to Plaintiffs and Class Members.

71.    The injury to consumers by this conduct greatly outweighs any alleged countervailing benefit to consumers or competition under all of the circumstances.

72.    Had Plaintiffs and Class Members known about the Fuel Pump Defect at the time of purchase, including the safety hazard posed by the Fuel Pump Defect and the monetary cost of repair, or the true effect of Defendant's warranty of the Vehicles, they would not have bought the Vehicles or would have paid much less for them.

73.    Had Plaintiffs and Class Members been adequately notified by Defendant about the Fuel Pump Defect, they would not have purchased or leased the Vehicles or paid as much for them.  Further, Plaintiff Overland would not have paid to repair the Fuel Pump and would have instead had it fixed under warranty and without cost.

21

74.     As a direct and proximate result of Defendant's actions, Plaintiffs and Class Members have suffered economic damages including, but not limited to, repair costs, loss of use of the Vehicles, substantial losses in value and resale value of the Vehicles, and other damages.

75.     Pursuant to N.J. Stat. Ann. § 56:8-20, Plaintiffs will serve the New Jersey Attorney General with a copy of this Complaint within 10 days of filing.

## COUNT IV
### Violation of 15 U.S.C. § 2301, *et seq.*
### (On Behalf of Plaintiffs and the Nationwide Class)

76.     Plaintiffs re-allege and incorporate herein all foregoing factual allegations.

77.     The Vehicles are consumer products as defined in 15 U.S.C. § 2301(1).

78.     Plaintiffs and Class Members are consumers as defined in 15 U.S.C. § 2301(3).

79.     Defendant is a supplier and warrantor as defined in 15 U.S.C. § 2301(4)-(5).

80.     By reason of Defendant's breach of its implied and express warranties that the Vehicles were safe, reliable, and free from material defects, and that Defendant would repair any such defects without cost to Class Members, Defendant has violated the rights of Plaintiffs and Class Members.

22

81.    As a direct and proximate result of Defendant's actions, Plaintiffs and Class Members have suffered economic damages including, but not limited to, repair costs, loss of use of the Vehicles, substantial losses in value and resale value of the Vehicles, and other damages.

**COUNT V**
**Violation of Mo. Ann. Stat. § 407.010, *et seq.***
**(On Behalf of Plaintiff Boehm and the Missouri Subclass)**

82.    Plaintiffs re-allege and incorporate herein all foregoing factual allegations.

83.    Plaintiff Boehm brings this claim individually and on behalf of the Missouri Subclass against Defendant.

84.    Defendant, Plaintiff Boehm, and Missouri Subclass Members are "persons" within the meaning of Mo. Rev. Stat. § 407.010(5).

85.    Defendant is engaged in "trade" or "commerce" in the state of Missouri within the meaning of Mo. Ann. Stat. § 407.010(7).

86.    The Missouri Merchandising Practices Act ("MMPA") makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise."  Mo. Ann. Stat. § 407.020.

87.     Defendant violated the MMPA by engaging in the following deceptive trade practices:

(a)     affirmatively representing that the Vehicles are safe and reliable, and that MINI would ensure "proper performance" of the Vehicles despite knowledge of the Fuel Pump Defect; and

(b)     affirmatively representing that the Vehicles were warranted against defects in materials and workmanship but did not intend to honor the warranty if, like the Fuel Pump Defect here, it was present during the warranty period but did not manifest until after that period.

88.     Plaintiff Boehm and Missouri Subclass Members reasonably expected that the Vehicles would not be defectively designed such that the Fuel Pump would fail during normal use and cause sudden catastrophic engine failure. Further, Plaintiff Boehm and Missouri Subclass Members reasonably expected Defendant to honor its warranty obligations as represented to them at the time they purchased their Vehicles.

89.     Defendant knew, or, in the exercise of diligence, should have known, that the Vehicles were defectively designed or manufactured, posed a safety risk, and were not suitable for their intended and/or expected use.

90.     In failing to disclose the Fuel Pump Defect, the safety risk it posed, and the associated repair options and attendant costs which Defendant would not

24

cover under warranty in the event of failure, Defendant omitted material facts it was under a duty to disclose to Plaintiff Boehm and Missouri Subclass Members.

91.    The injury to consumers by this conduct greatly outweighs any alleged countervailing benefit to consumers or competition under all of the circumstances.

92.    Had Plaintiff Boehm and Missouri Subclass Members known about the Fuel Pump Defect at the time of purchase, including the safety hazard posed by the Fuel Pump Defect and the monetary cost of repair, or the true effect of Defendant's warranty of the Vehicles, they would not have bought the Vehicles or would have paid much less for them.

93.    Had Plaintiff Boehm and Missouri Subclass Members been adequately notified by Defendant about the Fuel Pump Defect, they would not have paid to repair the Fuel Pump and the damage caused by the Fuel Pump Defect and would have instead had it fixed under warranty and without cost.

94.    As a direct and proximate result of Defendant's actions, Plaintiff Boehm and Missouri Subclass Members have suffered economic damages including, but not limited to, repair costs, loss of use of the Vehicles, substantial losses in value and resale value of the Vehicles, and other damages.

## COUNT VI
### Violation of 815 Ill. Comp. Stat. § 505/1, *et seq.*
### (On Behalf of Plaintiff Silva and the Illinois Subclass)

95.     Plaintiffs re-allege and incorporate herein all foregoing factual allegations.

96.     Plaintiff Silva brings this claim individually and on behalf of the Illinois Subclass against Defendant.

97.     Defendant is a "person" as that term is defined in 815 Ill. Comp. Stat. 505/1(c).

98.     Plaintiffs and the Subclass members are "consumers" as that term is defined in 815 Ill. Comp. Stat. 505/1(e).

99.     The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact … in the conduct of any trade or commerce … whether any person has in fact been misled, deceived or damaged thereby."  815 Ill. Comp. Stat. 505/2.

100.    Defendant violated the ICFA by engaging in the following deceptive trade practices:

(a)    affirmatively representing that the Vehicles are safe and reliable, and that MINI would ensure "proper performance" of the Vehicles despite knowledge of the Fuel Pump Defect; and

(b)    affirmatively representing that the Vehicles were warranted against defects in materials and workmanship but did not intend to honor the warranty if, like the Fuel Pump Defect here, it was present during the warranty period but did not manifest until after that period.

101.    Plaintiff Silva and Illinois Subclass Members reasonably expected that the Vehicles would not be defectively designed such that the Fuel Pump would fail during normal use and cause sudden catastrophic engine failure. Further, Plaintiff Silva and Illinois Subclass Members reasonably expected Defendant to honor its warranty obligations as represented to them at the time they purchased their Vehicles.

102.    Defendant knew, or, in the exercise of diligence, should have known, that the Vehicles were defectively designed or manufactured, posed a safety risk, and were not suitable for their intended and/or expected use.

103.    In failing to disclose the Fuel Pump Defect, the safety risk it posed, and the associated (potential) repair options and attendant costs which Defendant would not cover under warranty, Defendant omitted material facts it was under a duty to disclose to Plaintiff Silva and Illinois Subclass Members.

27

104.    The injury to consumers by this conduct greatly outweighs any alleged countervailing benefit to consumers or competition under all of the circumstances.

105.    Had Plaintiff Silva and Illinois Subclass Members known about the Fuel Pump Defect at the time of purchase, including the safety hazard posed by the Fuel Pump Defect and the monetary cost of repair, or the true effect of Defendant's warranty of the Vehicles, they would not have bought the Vehicles or would have paid much less for them.

106.    Had Plaintiff Silva and Illinois Subclass Members been adequately notified by Defendant about the Fuel Pump Defect, they would not have paid Defendant to repair the Fuel Pump and the damage caused by the Fuel Pump Defect and would have instead had it fixed under warranty and without cost.

107.    As a direct and proximate result of Defendant's actions, Plaintiff Silva and Illinois Subclass Members have suffered economic damages including, but not limited to, repair costs, loss of use of the Vehicles, substantial losses in value and resale value of the Vehicles, and other damages.

### COUNT VII
**Violation of Tex. Bus. & Com. Code Ann. § 17.46, *et seq.***
**(On Behalf of Plaintiff Overland and the Texas Subclass)**

108.    Plaintiffs re-allege and incorporate herein all foregoing factual allegations.

28

109.    Plaintiff Overland brings this claim individually and on behalf of the Texas Subclass against Defendant.

110.    Plaintiff Overland, and Texas Subclass Members are "consumers" within the meaning of Tex. Bus. & Com. Code Ann. § 17.45(4).

111.    Defendant is engaged in "trade" or "commerce" in the state of Texas within the meaning of Tex. Bus. & Com. Code Ann. § 17.45(6).

112.    The Texas Deceptive Trade Practices Act ("TDTPA") declares "[f]alse, misleading, or deceptive acts" to be unlawful under Tex. Bus. & Com. Code Ann. § 17.46.

113.    § 17.46(b) of the TDTPA provides that "false, misleading, or deceptive acts or practices" includes, but is not limited to, the following acts:

(a)    § 17.46(b)(7) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are another;

(b)    § 17.46(b)(13) knowingly making false or misleading statements of fact concerning the need for parts, replacement, or repair service; and

(c)    § 17.46 (b)(24) failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction.

114.    Defendant violated at least the provisions of the TDTPA stated above by engaging in the following deceptive trade practices:

(a)    affirmatively representing that the Vehicles are safe, reliable and that MINI would ensure "proper performance" of the Vehicles despite knowledge of the Fuel Pump Defect; and

(b)    affirmatively representing that the Vehicles were warranted against defects in materials and workmanship but did not intend to honor the warranty if, like the Fuel Pump Defect here, it was present during the warranty period but did not manifest until after that period.

115.    Plaintiff Overland and Texas Subclass Members reasonably expected that the Vehicles would not be defectively designed such that the Fuel Pump would fail during normal use and cause sudden catastrophic engine failure. Further, Plaintiff Overland and Texas Subclass Members reasonably expected Defendant to honor its warranty obligations as represented to them at the time they purchased their Vehicles.

116.    Defendant knew, or in the exercise of diligence, should have known, that the Vehicles were defectively designed or manufactured, posed a safety risk, and were not suitable for their intended and/or expected use.

117.    In failing to disclose the Fuel Pump Defect, the safety risk it posed, and the associated (potential) repair options and attendant costs which Defendant

would not cover under warranty, Defendant omitted material facts it was under a duty to disclose to Plaintiff Overland and Texas Subclass Members.

118.    The injury to consumers by this conduct greatly outweighs any alleged countervailing benefit to consumers or competition under all of the circumstances.

119.    Had Plaintiff Overland and Texas Subclass Members known about the Fuel Pump Defect at the time of purchase, including the safety hazard posed by the Fuel Pump Defect and the monetary cost of repair, or the true effect of Defendant's warranty of the Vehicles, they would not have bought the Vehicles or would have paid much less for them.

120.    Had Plaintiff Overland and Texas Subclass Members been adequately notified by Defendant about the Fuel Pump Defect, they would not have paid Defendant to repair the Fuel Pump and the damage caused by the Fuel Pump Defect and would have instead had it fixed under warranty and without cost.

121.    As a direct and proximate result of Defendant's actions, Plaintiff Overland and Texas Subclass Members have suffered economic damages including, but not limited to, repair costs, loss of use of the Vehicles, substantial losses in value and resale value of the Vehicles, and other damages.

122.    Plaintiff Overland has made a demand in satisfaction of Tex. Bus. & Com. Code Ann. § 17.505(a), and may amend this Complaint to assert claims under the TDTPA once the required notice period has elapsed.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Classes proposed in this Complaint, respectfully request that the Court enter judgment in their favor and against Defendant, as follows:

A.    Declaring that this action is a proper class action, certifying the Classes as requested herein, designating Plaintiffs as Class Representatives, and appointing the undersigned counsel as Class Counsel;

B.    Declaring that Defendant is financially responsible for notifying all Class Members of the Fuel Pump Defect and Defendant's obligation to repair the Fuel Pump Defect, reimbursing Class Members for such repairs, and/or compensating Class Members for the diminution in value of the Vehicles;

C.    Enjoining Defendant, where applicable, from refusing to repair the Fuel Pump Defect at no charge to Class Members;

D.    Ordering Defendant to pay compensatory, exemplary, and/or statutory damages to Plaintiffs and Class Members in an amount to be proven at trial;

E.    Ordering Defendant to pay restitution to Plaintiffs and Class Members;

F.      Ordering Defendant to pay attorneys' fees and litigation costs to

Plaintiffs and Class Members;

G.      Ordering Defendant to pay both pre- and post-judgment interest on

any amounts awarded, as allowed by law; and

H.      Ordering such other and further relief as may be just and proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury of all claims in this Complaint so triable.


Dated:  December 8, 2017                    Respectfully submitted,


                                            AHDOOT & WOLFSON, PC

                                            /s/ Bradley K. King
                                            Bradley K. King (NJ Bar # 081472013)
                                            10728 Lindbrook Drive
                                            Los Angeles, California 90024-3102
                                            Tel: (310) 474-9111
                                            Fax: (310) 474-8585
                                            Email: bking@ahdootwolfson.com

                                            *Counsel for Plaintiffs*
                                            *and the Putative Classes*